OPINION OF THE COURT
Gerard E. Delaney, J.
This case which on its face initially involves, inter alia, only a standard motion by a party (plaintiff administratrix) to vacate an interrogatory served by codefendant (Dr. Lai) and/or to strike certain demands of such interrogatories, also serves as a fine example, in this court’s opinion, of the misuse and abuse of disclosure procedures under the CPLR.
On or about May 7,1980, plaintiff’s decedent, one Joseph Rosen, died at Vassar Brothers Hospital in Poughkeepsie, Dutchess County, New York. At the time of his death, Mr. Rosen was a citizen of the State of New York and lived in Hopewell Junction, Dutchess County, with his wife, Frieda, his son, Lester, and his son’s family. He and his wife shared an apartment in his son’s home. Joseph Rosen was survived by Frieda, Lester, and two daughters, Helene Trattner of Farmingdale, New York, and the plaintiff administratrix, Gloria Berlin, of Toms River, New Jersey. *91 While Gloria Berlin is administratrix of the decedent, Joseph Rosen, she is not a legatee under Joseph Rosen’s will.
On March 9, 1982, a summons and complaint were served in this matter on Vassar Brothers Hospital and the six named doctors (in particular Dr. Jenq-Min Lai, hereinafter Dr. Lai). All defendant doctors are represented by the law firm of Meiselman, Farber, Stella & Eberz, P. C. (hereinafter Meiselman). The summons and complaint allege, inter alia, causes of action for wrongful death and conscious pain and suffering. Issue was joined as to all defendant physicians by service of six separate verified answers on September 7, 1982. All defendants at the time of their answers also served requests for medical authorizations and certain notices to produce. Meiselman served five separate demands for bills of particulars upon the plaintiff, one for every defendant doctor except Dr. Lai at the time of the service of its answers.
On December 27,1982, plaintiff served its bill of particulars and shortly thereafter the defendant doctors (except Dr. Lai) sought an order of preclusion on what they perceived to be a defective bill of particulars or, in the alternative, for an order to compel the plaintiff to serve a further bill of particulars. At that time plaintiff had cross-moved as well for an order to compel certain discovery and inspection. This motion was made returnable on February 14, 1983, and on April 20,1983, this court (Jiudice, J.) granted plaintiff’s cross motion compelling certain discovery as against codefendants, Dr. Katz and Vassar Brothers Hospital. Justice Jiudice also granted a conditional motion by the defendant doctors (except Dr. Lai) to preclude unless plaintiff should supply a further bill of particulars with respect to certain listed demands. Shortly after receiving Justice Jiudice’s order, plaintiff did, indeed, serve separate supplemental bills of particulars with respect to all defendants except Dr. Lai. Dr. Lai, of course, did not receive a supplemental bill of particulars because, indeed, he had not requested an original bill of particulars.
Plaintiffs had earlier instituted an action in the United States District Court of the Southern District of New York (82 Civ 0637 [ADS]). By such Federal action, defendants *92 certainly became aware at that point that at the time of his death, Joseph Rosen was living with his son, Lester Rosen, and it also became apparent by such action and by discussions between the counsels hereto that at the time of his death the plaintiff administratrix, Gloria Berlin, was not in New York State and, indeed, was a resident of New Jersey. It is alleged by counsel for plaintiff administratrix that an agreement was made at this time by himself and Meiselman to depose the nonparty witness, Lester Rosen, in lieu of the plaintiff administratrix, Gloria Berlin. This agreement was formalized in a letter dated June 1, 1983, from Meiselman to plaintiff’s counsel and agreed to and signed by him. In the letter Meiselman confirmed, inter alia, “our agreement that you will make your best efforts to substitute the son of plaintiff’s decedent for the plaintiff at our initial examination before trial (whether ordered by the court or scheduled on consent). However, we are not thereby waiving our right to depose the plaintiff administratrix or any other non-party witness at a later time should it appear to us that any such person has knowledge or information germane to the defense of this case. Furthermore, it is understood that our firm will be accorded priority in deposing decedent’s son as if we were deposing plaintiff herself”.
The examination before trial of the nonparty witness produced in lieu of the plaintiff, Lester Rosen, was held on July 20, 1983. Such examination consists of 57 pages of transcript wherein Lester Rosen was examined by Mr. Eberz of the Meiselman firm and Mr. Kilsch, counsel for defendant hospital. A subject of interest is there is no doubt but that defendant doctor, Dr. Lai, and the other doctors must certainly be deemed to have participated in the quest for and the conduct of the examination before trial; indeed, Mr. Eberz of the Meiselman firm stated on page 3 of such examination, “Mr. Rosen, I represent the doctors that have been named as defendants in this lawsuit”. On pages 18 and 19 of the transcript of such examination, Mr. Eberz directed specific questions to Mr. Rosen concerning the defendant, Dr. Lai. The course of the examination of Mr. Rosen covered the following broad, general topics: the relationship of Lester Rosen to the decedent and other *93 family relationships and residences; financial transactions within the family; the extent of Lester Rosen’s daily contact with decedent; employment of decedent; salary of decedent; employment of decedent’s wife and her finances; decedent’s health and physical appearance; Social Security and/or pension benefits; relationship, if any, of decedent and/or Mr. Lester Rosen with each doctor defendant; decedent’s medication; decedent’s visits to hospitals; the actions of Lester Rosen, his family and decedent while in the hospital; questions concerning the “Cat Scan”, the doctors and decedent; the death of decedent and conversations with doctors and/or hospital employees thereafter; cause of death of decedent and Mr. Rosen’s knowledge or lack of same; and finally, questions concerning the relationship of plaintiff’s administratrix, Gloria Berlin, which indicated she did not live with her father nor was she present at the hospital before or after her father’s death.
Plaintiff administratrix, Gloria Berlin, would normally be subject to disclosure only as regards her knowledge as administratrix and not her individual knowledge. (Cf. Pardee v Mutual Benefit Life Ins. Co., 238 App Div 294.) As above, Gloria Berlin is not a legatee under the will. It is also clear from the examination of Lester Rosen that decedent lived in the home of Lester Rosen. Lester Rosen had daily contact with him. Lester Rosen employed decedent. Lester Rosen was with decedent when he went to the hospital, was present during conversations with certain doctors and plaintiff administratrix, Gloria Berlin, had no such relationship or knowledge.
The agreement requested by Meiselman on June 1,1983, wherein counsel for plaintiff administratrix agreed to produce Lester Rosen voluntarily rather than make Meiselman and the defendants seek a court order for such examination of the nonparty witness (cf. CPLR 3101, subd [a], par [4]), was certainly to defendants’ advantage as it was clear that Mr. Rosen was the person having knowledge which the administratrix did not.
On July 26, 1983, six days after the examination of Lester Rosen, defendant, Dr. Lai, through Meiselman, served a 20-page set of interrogatories upon plaintiff administratrix, Gloria Berlin, consisting of 44 numbered *94 questions and lettered and numbered subparts consisting in total of 163 demands for interrogatories of Gloria Berlin. Plaintiff moves to initially vacate completely such interrogatories or, in the alternative, to strike certain demands therein and argues in substance that under the agreement heretofore mentioned and the rules of the CPLR, such interrogatories should not be allowed.
Defendant argues that whether or not the Meiselman firm was representing Dr. Lai at the deposition of Lester Rosen is irrelevant since that was not a deposition of the plaintiff in that they have a right to depose the plaintiff if it would appear to them within their sole discretion that she had knowledge or information germane to the action. The defendants further argue that plaintiff must run the risk that not all defendants in multidefendant actions will employ the same disclosure devices and that it may be required to comply with a variety of disclosure devices employed by these defendants.
Under CPLR 3130 (subd 1) “[a] party may not serve written interrogatories on another party and * * * take a deposition pursuant to rule 3107 without leave of court” in a wrongful death action. This limitation was apparently made by “a suspicious Legislature, [that was] fearful that wealthy litigants with a battery of lawyers could bury their [poor] adversaries in a blizzard of paper”. (Siegel, NY Prac, § 361, p 452.)
The first question would appear to be whether in the facts of this case, defendant, Dr. Lai, needed to apply for leave of this court in order to even serve such interrogatories. Such question must, by its nature, refer back and require re-examination of the agreement between all defendants and plaintiff administratrix. There is no doubt but that defendant, Dr. Lai, through his counsel requested of plaintiff administratrix the examination or consent of the nonparty witness, Lester Rosen, and obtained a procedural benefit in doing so, to wit, the conducting of such examination without the necessity of applying for a court order and, indeed, as is clear by the context of such examination, also examined the person with the most substantive information. The request of such examination of Lester Rosen by Meiselman and the full participation in *95 same on behalf of all defendants, including Dr. Lai, by such law firm, was, in the opinion of this court, sufficient to invoke CPLR 3130 (subd 1) so as to require further leave of this court before further disclosure by way of interrogatories was to be affected. (Compare Seldin v Nassau County Med. Center, 94 AD2d 701.) This is especially true in light of the nature of the interrogatories which were actually served. While the examination of the plaintiff administratrix would normally be improper as to her individual knowledge (see above) there may under circumstances, be legitimate questions of the administratrix concerning matters of the estate. (Compare Fitzgerald v Primmer, 1 Misc 2d 403, 404 [pre CPLR 3130].)
It should be noted that this court is not saying the defendant, Dr. Lai, may not use further proper legal interrogatories as directed to the plaintiff administratrix if such proposed interrogatories were presented to the court. This court merely holds initially that where as in the circumstances of this case a defendant requests and agrees to hold an examination before trial of a party to be examined in lieu of the plaintiff, such is sufficient to invoke the requirements of CPLR 3130 (subd 1) so as to require such defendant to seek leave of the court to inquire of the actual plaintiff administratrix by way of interrogatories. Inasmuch as such section was intended to prevent abuse of the discovery process, the purported reservation by Meiselman of its right to further depose the plaintiff administratrix is proper only to the extent that such is consistent with CPLR 3130 (subd 1) and the review of the court on a motion properly made thereunder.
Having proceeded as he did in the above matter, Dr. Lai’s contention that it lays within his sole discretion as to whether plaintiff administratrix had knowledge or information germane to this action so as to enable him to serve further interrogatories is improper for, as stated above, the issuance of such now becomes proper for the review and determination of this court.
Having failed to seek leave of this court under CPLR 3130 (subd 1), this court firstly finds and holds that the service of the interrogatories upon plaintiff administratrix *96 and Lester Rosen on July 26, 1983, was improper, defendant having failed to secure leave of this court to serve same.
Accordingly, the motion for leave to vacate such interrogatories in their entirety is granted without prejudice to defendant seeking proper leave of the court and such interrogatories are stricken and deemed a nullity.
Secondly, this court finds and holds under CPLR 3103 (subd [a]) that under the circumstances stated above and the nature of the interrogatories served on behalf of Dr. Lai upon plaintiff administratrix, that a protective order shall also issue striking and vacating such interrogatories in their entirety without prejudice to defendant’s service upon leave, as stated above, of a new and proper set of interrogatories, if so desired, limited to evidence material and necessary to the defense of the action. As propounded, the interrogatories blur the distinction between plaintiff in her individual capacity and in her representative capacity and the respective knowledge and disclosure deemed appropriate. Such interrogatories seek, inter alia, information concerning the actions of Dr. Lai and all other codefendants, detailed medical information concerning treatment of decedent and his prior health, information more properly obtainable by a bill of particulars and information in the form of opinion.
Under the circumstances, the court finds the interrogatories at bar patently burdensome, oppressive, abusive and improper under the circumstances of this case. Accordingly, this court now also vacates such interrogatories without prejudice in their entirety. (Cf. Barouh Eaton Allen Corp. v International Business Machs. Corp., 76 AD2d 873.
Motion costs of $20 each awarded to plaintiff administratrix as against defendant, Dr. Lai.